MARGARET J. BURNS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burns v. Commissioner
Docket No. 14948-87.
United States Tax Court
T.C. Memo 1988-536; 1988 Tax Ct. Memo LEXIS 565; 56 T.C.M. (CCH) 703; T.C.M. (RIA) 88536; November 21, 1988. *565 Held: P is entitled to a charitable contribution deduction of $ 3,281.69. Held further: Because P's calendar notations substantiate her charitable contributions she is not liable for additions to tax under section 6653(a)(1) and 6653(a)(2). Margaret J. Burns, pro se. Anthony S. Gasaway, *566 for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By statutory notices dated March 2, 1987, respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Additions to Tax
Section
Section
Section
Year
Deficiency
6651(a)(1) n1
6653(a)(1)
6653(a)(2)
1981
$ 4,805
$ 146.50
$ 240.25
*
1984
$ 1,609
$ 235.79
$ 322.85
**
The parties stipulated that there is no deficiency in the Federal income tax due from, nor overpayment due to, petitioner for 1981. The parties also stipulated that an error existed in the *567 statutory notice of deficiency issued to petitioner with respect to the taxable year 1984. Pursuant to that stipulation, respondent has conceded that the deficiency in and additions to petitioner's Federal income tax for 1984 should be reduced as follows: Additions to Tax
Section
Section
Section
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
1984
$ 633
--
$ 31.65
**
After concessions, the issues for decision are: (1) Whether petitioner is entitled to a deduction for charitable contributions; [3] and (2) whether petitioner is liable for additions to tax under section 6653(a)(1) and (2). FINDINGS OF FACT Some of the the facts have been stipulated and are found accordingly. The stipulations and exhibits attached thereto are incorporated herein by reference. Petitioner resided in Oklahoma City, Oklahoma, at the time the petition in this case *568 was filed. During 1984, petitioner was employed by General Motors Corporation as an automobile assembler. She earned gross wages of $ 32,775.73. Petitioner maintained a household for her daughter and herself. Petitioner managed her personal finances without a checking account. She paid all of her bills in cash except for the bills she paid through the mail with money orders. Petitioner and her daughter attended services at Faith Baptist Church (the Church) throughout 1984. Petitioner regularly made cash contributions to the church. In addition, petitioner loaned the Church $ 1,600 for the purchase of a bus. The Church repaid that amount in installments of $ 150 per month commencing in April or May 1984. Petitioner endorsed the loan repayment checks and presented them to the Church as offerings. She also purchased gas for the Church's bus on several occasions. The Church maintained no formal record of the nature or amount of petitioner's contributions or contributions made by any other members of its small congregation. Consequently, petitioner received no receipts for the cash, checks, or gas purchases she contributed to the Church. Petitioner did, however, maintain a *569 kitchen calendar on which she made notations regarding, among other things, charitable contributions. The calendar notations reflect regular Sunday contributions to the Church as well as purchases of gas for the Church's bus, a donation to the OETA Foundation, a donation to the Karen Denton Medical Fund, a "Food Basket" donation, and a single entry denoting "Food Donations." Petitioner also contributed to the Salvation Army during 1984. The contributions to the Salvation Army are not noted on her calendar but petitioner retained the stubs from two money orders totaling $ 17.13 for contributions she made to that organization. Before the due date for her 1984 Federal income tax return petitioner filed a document labeled "THIS IS NOT A RETURN" with the Internal Revenue Service Center at Austin, Texas. This tax protester-type return reported $ 32,775.85 of gross receipts which were offset by a "Cost basis (fair market value) of labor Received as Gift from Creator." It also reported "Charitable contributions allowable" in the amount of $ 315.17 and two "Exemptions" of $ 1,000 each. Based on information reported in the document, petitioner demanded a refund of the sum of the Federal *570 income and Social Security taxes withheld from her 1984 wages. On or about April 13, 1986, the same day that petitioner filed her 1985 Federal income tax return, she also filed a Form 1040X purporting to amend her 1984 Federal income tax return. On Schedule A of that return petitioner reported cash contributions of $ 3,116. In October 1986, petitioner filed with the Internal Revenue Service a Form 4744, Questionnaire - Contributions, on which she claimed charitable contributions made during 1984 in the amount of $ 3,462.13. Petitioner did not report any charitable contributions on either her 1982 or 1983 Federal income tax returns. Petitioner reported cash contributions of $ 4,645 and $ 2,869 on her 1985 and 1986 Federal income tax returns, respectively. Petitioner changed churches during 1985 and her new church, Blue Lakes Baptist Church, kept records verifying contributions from her totaling $ 3,075 for 1985 and $ 2,332.25 for 1986. Petitioner made contributions to other charitable organizations during 1985 and 1986. In his notice of deficiency regarding the 1984 taxable year, respondent disallowed the charitable contributions claimed by petitioner for lack of substantiation. *571 OPINION The issues herein are purely factual. Petitioner bears the burden of proving that respondent's determinations are erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Moreover, deductions are a matter of legislative grace and petitioner must establish her entitlement to a charitable contribution deduction in the amount claimed. Deputy v. du Pont,308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Under section 170, a taxpayer is entitled to deduct charitable contribution subject to certain limitations. In order to qualify for the deduction claimed, petitioner must show that contributions were actually made and that they were made to qualified charitable organizations. Sec. 170(a) and 170(c). Petitioner contends that the following are deductible contributions: Church (cash
$ 3,320.00
Church (gas)
37.00
Harvest Gleaner Hour
23.00
Karen Denton Medical Fund
20.00
Salvation Army
37.13
OETA Foundation
25.00
Total
[4] $ 3,462.13
*572 To substantiate the contributions in issue petitioner relies almost exclusively on the kitchen calendar which she maintained as a contemporaneous record of her charitable contributions for 1984. The calendar notations reflect contributions totaling $ 3,378.62 but petitioner failed to reconcile that amount with the amounts she reported as her charitable contributions for the year. Consequently, petitioner never reported the total of the amounts recorded on the calendar to the Internal Revenue Service. She reported $ 315.17 on her initial tax protestor-type return, $ 3,116 on her amended return, and $ 3,462.13 on the most recently filed contributions questionnaire. Petitioner explained to our satisfaction that the lowest reported figure was not intended to reflect the actual amount contribution; rather it resulted from misconceptions advanced by the tax protester group with which she was formerly affiliated. Petitioner, however, offered no explanation for the differences between the two higher reported amounts and the calendar total. On the few occasions that petitioner supplemented her regular Sunday contribution to the Church with a mid-week contribution, she recorded *573 the additional amount together with the amount contributed the immediately preceding Sunday. The contributions to the Karen Denton Medical Fund and the OETA Foundation also appear on the calendar on dates different than the dates such contributions were allegedly made. The contributions to the Salvation Army do not appear on the Calendar at all. In spite of these apparent instances of sloppy record keeping, we find that, when considered together with the other evidence in the record, petitioner's calendar notations substantiate her charitable contributions. [5] Accordingly, petitioner is entitled to deduct the amounts she recorded on her calendar except as otherwise noted herein. *574 In addition to being documented on her calendar, petitioner's contributions to the Church are substantiated by her own testimony, the testimony of the Church's pastor, and records from another church verifying contributions of comparable amounts in subsequent years. We find petitioner's testimony to have been candid and credible and we believe that she contributed cash, loan repayment checks, and gas purchases to the Church during 1984. [6] Further, we believe petitioner recorded the amounts contributed on her kitchen calendar. The calendar reflects contributions to the Church of cash and checks totally $ 3,227.56 and gas purchases totaling $ 48.06. The amounts recorded on petitioner's calendar cannot be verified by the Church because it maintained no record of contributions. [7] However, the pastor verified several of petitioner's largest contributions *575 by testifying that he observed two or three of the $ 150 loan repayment checks in the Church's offering. He only collected the offering in the treasurer's absence and, therefore, he could not testify about the other repayment checks issued in 1984. Calendar notations reflecting contributions of exactly $ 150 appear in 6 of the last 8 months of 1984 and notations reflecting contributions exceeding $ 150 appear in the other 2 months. We conclude that these calendar entries correspond to contributions of the loan repayment checks to the Church. The pastor's testimony enhances the reliability of the calendar notations not only with respect to the contribution of the loan repayment checks but also with respect to petitioner's other contributions to the Church. The fact that petitioner reported no cash contributions on either her 1982 or 1983 Federal income tax *576 returns does not alter our finding that she regularly attended services at and contributed to the Church during 1984. In the two succeeding taxable years, 1985 and 1986, petitioner reported sizeable cash contributions on her Federal income tax returns. The returns are merely a statement of petitioner's claim and do not establish the facts contained therein. Wilkinson v. Commissioner,71 T.C. 633, 639 (1979); Roberts v. Commissioner,62 T.C. 834, 837 (1974); Seaboard Commercial Corp. v. Commissioner,28 T.C. 1034, 1051 (1957). However, petitioner changed churches in 1985 and records of the church she then attended verify her contributions in the year of the change and the succeeding year. This evidence falls short of establishing a predictable pattern of contribution but it supports our finding that petitioner contributed the amounts recorded on her calendar to the Church during the year in issue. Petitioner produced no receipts or documentary evidence other than the calendar notations to substantiate her purchases of gas for the Church's bus. We do not doubt that petitioner made such purchases, however, she obviously erred in *577 recollecting the amounts thereof because her calendar reflects gas purchases of $ 48.06 while the contributions questionnaire reflects purchases of only $ 37. At trial, petitioner claimed that the lesser amount represents the total gas purchases. We resolve the difference by recognizing her downward adjustment as appropriate even though the calendar appears to justify deducting the greater amount. Based on the foregoing, we hold that petitioner is entitled to a charitable contribution deduction of $ 3,227.56 with respect to her contributions of cash and loan repayment checks to the Church and $ 37 with respect to her gas purchases. As to the contributions to the Harvest Gleaner Hour and the Karen Denton Medical Fund, petitioner produced no receipts or documentary evidence other than the calendar notations to substantiate the amounts claimed. Without more evidence, we cannot determine whether the contributions were made to qualified charitable organizations. Sec. 170(c). Petitioner's alleged contribution to the OETA Foundation presents similar problems. Aside from petitioner's calendar notation the only documentary evidence presented is a copy of a cancelled check payable *578 to the OETA Foundation. Petitioner claimed the contribution as a deduction in spite of the fact that the $ 25 check was drawn on her mother's account. Petitioner failed to prove she, rather than her mother, made the contribution. Petitioner also failed to prove that OETA was a qualified charitable organization. Sec. 170(c). She described the foundation as a public television station but we refuse to recognize it as a qualified charitable organization solely on the basis of her testimony. Accordingly, we sustain respondent's disallowance of petitioner's deduction for contributions to the Harvest Gleaner Hour, the Karen Denton Medical Fund, and the OETA Foundation. Petitioner contributed to the Salvation Army during 1984. The Salvation Army is a qualified charitable organization, therefore, only the amount contributed is at issue. Petitioner retained stubs from money orders reflecting contributions of $ 17.13 to the Salvation Army and those stubs adequately substantiate the deduction of a like amount. However, the lack of substantiation forces us to deny petitioner a deduction for the remaining $ 20 which she allegedly contributed. Petitioner failed to produce a receipt or *579 other documentary evidence to substantiate the cash contribution; she even failed to make a notation of it on her calendar. Respondent's disallowance of that portion of the contribution; is therefore sustained. Section 6653(a)(1) provides that "if any part of any underpayment * * * is due to negligence or intentional disregard of rules or regulations * * *, there shall be added to the tax an amount equal to 5% of the underpayment." Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (19985). Section 6653(a)(2) provides for a further addition to the tax of an amount equal to 50 percent of the interest on the portion of the underpayment attributable to negligence. Petitioner bears the burden of proving that the underpayment was not due to her negligence or intentional disregard of the rules or regulations. Bixby v. Commissioner,58 T.C. 757 (1972). Section 6001 requires a taxpayer to maintain records sufficient to establish the amount of any deduction claimed by her on her tax return. See sec. 1.6001-1(a) and 1.6001-1(e), *580 Income Tax Regs. When a taxpayer fails to maintain or make such records available, the negligence addition may be asserted. See, e.g., Zivnuska v. Commissioner,33 T.C. 226, 240-241 (1959). In this case, however, petitioner neither failed to maintain records nor refused to make them available. Accordingly, the proposed additions to tax cannot be founded on those grounds. The isolated instances of sloppy record keeping identified herein detract from the reliability of petitioner's records but do not warrant additions to tax under section 6653(a)(1) and 6653(a)(2). Decision will be entered under Rule 155.
Footnotes
*. 50% of the interest due on $ 4,805. 50% of the interest due on $ 633.
** 50% of the interest due on $ 6,457. n2 n1 Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and effect during the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure. n2 Respondent initially determined the section 6653(a)(2) addition with an "underpayment" based on the tax imposed for the year rather than the deficiency because petitioner's 1984 tax return was not timely filed. Sec. 6653(c)(1).↩
3. A derivative issue is whether petitioner has excess itemized deductions. That determination depends entirely upon our decision regarding charitable contributions because none of petitioner's other Schedule A deductions are being challenged.↩
4. Although petitioner claimed only $ 3,116 on her 1984 tax return, she testified at trial that she was claiming a deduction for the additional contributions reported on Form 4744, Questionnaire - Contributions.↩
5. The record keeping requirements of section 1.170A-13, Income tax Regs., effective for taxable years beginning on or after January 1, 1983, appear to require documentation different than that provided by petitioner's calendar notations. However, respondent never made compliance with section 1.170A-13, Income Tax Regs., an issue for decision in this case. Accordingly, we need not determine whether, in the absence of cancelled checks or receipts from the donee, petitioner's calendar notations constitute "other reliable written records: within the meaning of section 1.170A-13(a)(1), Income Tax Regs.↩
6. We deny petitioner a deduction for the amounts corresponding to the "Food Basket" and "Food Donations" notations, $ 25 and $ 10 respectively, because these amounts presumably reflect contributions of something other than cash, checks, or gas purchases and she failed to introduce any evidence substantiating other contributions.↩
7. In his notice of deficiency, respondent requested that petitioner obtain a receipt from the Church. Section 1.170A-13(e), Income Tax Regs.↩, authorizes this substantiation requirement with which petitioner could not comply because the Church maintained no records of contributions and, therefore, could issue no receipt.